IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| HEKYONG PAK, | * | |
| Plaintiff, | * | |
| v. | * | Civil No. RDB-10-01421 |
| DOLORES RIDGELL, *et al.*, | * | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## **MEMORANDUM OPINION**

This case arises out of Plaintiff Hekyong Pak's disbarment from the Maryland state bar and the prosecuting bar counsel's conduct in those proceedings. Plaintiff has asserted two distinct claims. First, Plaintiff seeks to have this court declare her disbarment null and void due to bar counsel's allegedly fraudulent conduct. Second, Plaintiff asserts a 42 U.S.C. § 1983 claim against Defendant Dolores Ridgell for damages. Defendants Ridgell and the Attorney Grievance Commission of Maryland now move to dismiss Plaintiff's claims. The parties' submissions have been reviewed and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2011). For the reasons that follow, Defendants Dolores Ridgell and the Attorney Grievance Commission of Maryland's Motion to Dismiss (ECF No. 15) is GRANTED.

## BACKGROUND

In ruling on a motion to dismiss, the factual allegations in the plaintiff's complaint must be accepted as true and those facts must be construed in the light most favorable to the plaintiff. *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999). A court may also rely on the contents of any documents referred to in the complaint that are integral to the allegations. *Philips v. Pitt County Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). A court may also

consider "matters of public record" that are appropriate for judicial notice. *Id.*; *Q Int'l Courier, Inc. v. Smoak*, 441 F.3d 214, 216 (4th Cir. 2006). A court is not required to accept as true "allegations that contradict matters properly subject to judicial notice." *Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002).

The disciplinary proceedings against Plaintiff arose out of Plaintiff's involvement in a series of property transfers. These transfers – which all concerned Plaintiff's parents' properties – were made after Business Loan Express, LLC ("BLE") sued Plaintiff's parents in this Court to collect on a defaulted debt. *Business Loan Express, LLC v. Hekyong Pak*, JFM-040634, 2004 WL 1554395 at *1 (D. Md. July 9, 2004). After prevailing in that litigation against Plaintiff's parents, BLE sued Plaintiff and H & K Family Trust, LLC[1] for a monetary judgment against Plaintiff and for declaratory judgment setting aside a transfer between Plaintiff's parents and H & K Family Trust. *Id.* at *1. Ultimately, United States District Judge Frederick Motz of this Court set aside the transfer and assessed money damages against Hekyong Pak because the Court found that she had aided her parents in fraudulently conveying the property.[2] *Id.* at *2.

---

[1] H & K Family Trust, LLC was a limited liability company set up by the Plaintiff for her parents. In *Business Loan Express, LLC v. Hekyong Pak*, the Court made the following factual findings at the summary judgment stage:
> On July 15, 2003, approximately one week after the motion to dismiss [the suit against her parents] was filed by Mr. and Mrs. Pak, Hekyong Pak caused to be formed H & K, which she admits she controls.

No. Civ. JFM-04-634, 2004 WL 1554395, at *1 (D. Md. July 9, 2004).

[2] Plaintiff contends that "[d]uring the course of the litigation it was *alleged* that Plaintiff had aided her parents in divesting their personal real estate holdings in order to avoid judgment from [a separate suit against her parents] being attached to those holdings." Am. Comp. ¶ 6 (emphasis added). However, as is clear from Judge Motz's ruling, this Court actually *found* that Plaintiff fraudulently conveyed property. *Business Loan Express, LLC*, 2004 WL 1554395, at *2. As the basic information regarding the filing and holding of *Business Loan Express, LLC v. Pak* is a matter of public record, it has been included when necessary.

On July 29, 2004, Plaintiff received a formal investigation letter from Defendant Dolores Ridgell ("Ridgell"), Assistant Bar Counsel. Plaintiff contacted Ridgell and Joel Aronson, the collection attorney for Business Loan Express. Plaintiff alleges that during the conversations (1) Ridgell suggested Judge Motz was the complainant and (2) both Ridgell and Aronson denied that Aronson was the complainant. Am. Comp. ¶ 6.

On September 7, 2005, Plaintiff appeared before the Peer Review Panel.[3] Plaintiff alleges that when Ridgell was asked about the origin of the complaint, she "falsely and affirmatively" stated the complaint was initiated by Judge Motz. Am. Comp. ¶ 10. In addition, Plaintiff states that when asked about the authenticity of a promissory note, Ridgell definitively stated that the note's authenticity was not in doubt. *Id.* ¶ 13. After the hearing, Plaintiff states that "the Peer Review panel unanimously dismissed all charges against the Petitioner."[4] *Id.* ¶ 8. Plaintiff claims that the "Attorney Grievance Commission with no legislative authority disregarded their precedence [sic] by moving forward with charges when the case was unanimously dismissed by the Peer Review panel." *Id.* ¶ 16.

After charges were formally filed in the Court of Appeals of Maryland, the case was assigned to Judge Timothy Martin in the Circuit Court for Baltimore County. At the evidentiary

---

[3] See MD R CTS J AND ATTYS Rule 16-713, 742, and 743 and discussion *infra* for detailed discussion of the purpose and role of the Peer Review Panel. To summarize, when a complaint against an attorney is filed in Maryland, bar counsel conducts an investigation. After the investigation, bar counsel may recommend a Peer Review. The Peer Review serves as the initial hearing to determine whether further disciplinary proceedings should be recommended.

[4] The Peer Review's recommendation for dismissal was undoubtedly quite hesitant:
> It is with great reluctance that the Panel recommends dismissal of all charges asserted by Bar Counsel against the Respondent, because all of the Panel Members believe that there was, indeed, a plan or scheme, managed by the Respondent, to avoid the payment of any monies to the judgment creditor mentioned in these proceedings,. However, we believe we have no choice.

Pl.'s Opp'n, Ex. AA, pp. 5-6.

hearing in front of Judge Martin, Joel Aronson, Business Loan Express' collection attorney, stated that he had sent a letter and a copy of Judge Motz's opinion in *Business Loan Express, LLC v. Pak* to the Attorney Grievance Commission. *Id.* ¶ 11. Plaintiff alleges Ridgell had removed that information from the case file.[5] *Id.*

On February 22, 2007, Judge Martin delivered his findings of fact and conclusions of law. Judge Martin determined that the transfers had been fraudulently made and that Plaintiff's actions constituted a violation of Maryland Rules of Professional Conduct 3.3(a)(1) and (2), 4.1(a)(1) and (2), 5.5(a)(b), 8.4(c), and 8.4(d).

Plaintiff's case was then taken before the Court of Appeals of Maryland, where Plaintiff alleges Ridgell committed further misconduct. Specifically, Plaintiff claims that while Ridgell allegedly did not dispute the validity of the note during the Peer Review, *id.* ¶ 13, Ridgell (1) suggested the note might be false in a post-hearing brief, *id.* ¶ 13, and (2) then told the Court of Appeals of Maryland that the note was fabricated and that she had never admitted the note was legitimate or valid. *Id.* ¶ 15.

On August 7, 2007, the Court of Appeals disbarred Plaintiff. *Id.* ¶ 17. Plaintiff then filed a writ of certiorari to the Supreme Court of the United States seeking review of her disbarment which was subsequently was denied. *Id.*

Plaintiff then filed suit in this Court, seeking declaratory and monetary relief. The Defendants moved to dismiss Plaintiff's claims under Federal Rule of Civil Procedure 12(b)(6). ECF No. 4. Although both parties submitted briefs on the first motion, Plaintiff filed an

---

[5] Plaintiff adds in her brief opposing the Defedants' Motion to Dismiss that this removal was done "[w]ith undisputable malice." Pl.'s Opp'n 6. While Plaintiff cites to "Exhibit C – Evidentiary Hearing Transcript at 82-83" for this proposition, this Court sees no language in that attachment that could plausibly support this claim.

Amended Complaint on November 8, 2010, seeking: (1) a declaration that the Court of Appeals of Maryland's decision to disbar Plaintiff is void, Am. Comp. ¶ 20; and (2) compensatory and punitive damages against Defendant Ridgell pursuant to 42 U.S.C. § 1983 "for fraud upon the Peer Review Panel and the rendering court acting under color of law in the investigative stage." *Id.* ¶ 21. The Defendants subsequently filed a Motion to Dismiss the Amended Complaint on November 16, which is now ripe for decision.

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes the dismissal of a complaint if it fails to state a claim upon which relief can be granted; therefore, a Rule 12(b)(6) motion tests the legal sufficiency of a complaint. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). When ruling on such a motion, the court must "accept the well-pled allegations of the complaint as true," and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997).

A complaint must be dismissed if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Simmons v. United Mort. and Loan Inv., LLC*, 634 F.3d 754, 768 (4th Cir. Jan. 21, 2011); *Andrew v. Clark*, 561 F.3d 261, 266 (4th Cir. 2009). Under the plausibility standard, a complaint must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. Well-pleaded factual allegations contained in the complaint are assumed to be true "even if [they are] doubtful in fact," but legal conclusions are not entitled to judicial deference. *See id.* (noting that "courts are not bound to accept as true a

legal conclusion couched as a factual allegation") (internal quotation marks omitted). Thus, even though Rule 8(a)(2) "marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Ashcroft v. Iqbal*, __ U.S. __, 129 S. Ct. at 1937, 1950 (2009).

In deciding a motion to dismiss, a court may rely not only on the allegations of the complaint, but also on the contents of any documents it refers to that are integral to the allegations or "matters of public record" that are appropriate for judicial notice. *Philips v. Pitt County Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009); *Q Int'l Courier, Inc. v. Smoak*, 441 F.3d 214, 216 (4th Cir. 2006). A court is not required to accept as true "allegations that contradict matters properly subject to judicial notice." *Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002).

To survive a Rule 12(b)(6) motion, the legal framework of the complaint must be supported by factual allegations that "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The Supreme Court has explained that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to plead a claim. *Iqbal*, 129 S. Ct. at 1949. The plausibility standard requires that the pleader show more than a sheer possibility of success, although it does not impose a "probability requirement." *Twombly*, 550 U.S. at 556. Instead, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1937. Thus, a court must "draw on its judicial experience and common sense" to determine whether the pleader has stated a plausible claim for relief. *Id.*

ANALYSIS

Plaintiff's two claims present two discrete issues. Plaintiff's first claim raises the issue of whether a United States District Court may void the decision of a state high court to disbar an attorney for lack of due process and for the allegedly fraudulent actions of bar counsel. Plaintiff's second claim presents the issue of whether a plaintiff may assert a § 1983 claim against the prosecuting bar counsel for alleged misconduct in the plaintiff's disbarment proceedings. Before reaching the merits of these claims, however, this Court must first determine that it has jurisdiction.

As explained below, this Court holds that it does not have jurisdiction to hear Plaintiff's first claim to void the Court of Appeals of Maryland's ruling. On the other hand, this Court finds that is has jurisdiction over Plaintiff's § 1983 claim but that recovery is barred by the doctrine of prosecutorial immunity.

**I.     Jurisdiction under the "*Rooker-Feldman* Doctrine"**

Under the "*Rooker-Feldman* Doctrine,"[6] a federal court does not have jurisdiction to overturn state court judgments, even when the federal complaint raises allegations that the state court judgments violate a claimant's constitutional or federal statutory rights. See *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415–16, 44 S.Ct. 149, 68 L.Ed. 362 (1923) and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 482–86, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983). The doctrine bars "lower courts from considering not only issues raised and decided in the state courts, but also issues that are 'inextricably intertwined' with the issues that were before the state court." *Washington v. Wilmore*, 407 F.3d 274, 279 (4th Cir. 2005) (quoting *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 486 (1983)). An issue is considered

---
[6] The doctrine is named after *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 486 (1983) and *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923).

"inextricably intertwined" when it "was not actually decided by the state court but where success on the . . . claim depends upon a determination that the state court wrongly decided the issues before it." *Brown & Root, Inc. v. Breckenridge*, 211 F.3d 194, 198 (4th Cir. 2000) (quoted in *Washington*, 407 F.3d at 279).

In *Feldman*, the doctrine was specifically invoked to bar the claims of two attorneys who were denied admission to the District of Columbia bar because they had not attended accredited law schools. The Court specifically noted that United States District Courts "do not have jurisdiction over challenges to state court decisions in particular cases arising out of judicial proceedings even if those challenges allege that the state court's action was unconstitutional." *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 486 (1983); *see also* 28 U.S.C. §1257. On the other hand, the Court said that a challenge to the state bar rules themselves could have been brought in a U.S. District Court because such an attack would "not require review of a final state court judgment in a particular case. *Feldman*, 460 U.S. at 486.

**A. Plaintiff's Claim to Void the Judgment of the Court of Appeals of Maryland**

Here, Plaintiff's first claim specifically requests that this Court void the Court of Appeals of Maryland's decision as unconstitutional. Plaintiff makes no claim that the various rules promulgated by the Court of Appeals of Maryland regarding disbarment proceedings are unconstitutional. In fact, Plaintiff's claim is built upon the allegation that the normal rules for disbarment were not followed. Thus, only the validity of the Court of Appeals of Maryland's decision – and not the constitutionality of the Maryland rules – is at issue. As Plaintiff's first claim seeks to set aside the ruling of the Court of Appeals of Maryland, her claim is barred by the *Rooker-Feldman* Doctrine. *See District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 486 (1983); *see also Czura v. Supreme Court of South Carolina*, 813 F.2d 644, 646 (4th Cir.

1987) (holding that the *Rooker-Feldman* Doctrine barred plaintiff's § 1983 claim against members of the attorney ethics committee and the judges of South Carolina's high court for disbarring him and denying him the opportunity to rejoin the bar).

### B. Plaintiff's § 1983 Claim

Plaintiff's § 1983 claim presents a slightly different question. While the *Rooker-Feldman* Doctrine generally bars "state court losers" from seeking review of a state court proceeding in a federal district court, *Washington*, 407 F.3d at 279, a federal district court *may* have jurisdiction when "a federal plaintiff present[s] some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party."[7] *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 293 (2005) (internal quotations marks omitted). Courts have usually distinguished between claims seeking to overturn a state court decision and claims asserted against other parties in earlier proceedings:

> If a federal plaintiff asserts as a legal wrong an allegedly erroneous decision by a state court, and seeks relief from a state court judgment based on that decision, *Rooker-Feldman* bars subject matter jurisdiction in federal district court. If, on the other hand, a federal plaintiff asserts as a legal wrong an allegedly illegal act or omission by an adverse party, *Rooker-Feldman* does not bar jurisdiction.

*Noel v. Hall*, 341 F.3d 1148, 1164 (9th Cir. 2003); *see also Washington*, 407 F.3d at 280.

Here, Plaintiff has sued bar counsel for bar counsel's allegedly fraudulent acts during Plaintiff's disbarment proceedings. An award of damages to plaintiff would not require that this Court void the decision of the Court of Appeals of Maryland and, as such, is properly considered

---

[7] The jurisdictional question is, of course, not the end of the inquiry. Even if the federal district court has jurisdiction, "state law [will] determine[] whether the defendant prevails under principles of preclusion." *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 293 (2005) (internal quotations marks omitted). This Court, however, does not reach the preclusion question as the claim is barred for other reasons discussed herein.

9

an "independent" claim. Thus, Plaintiff's § 1983 claim passes the jurisdictional hurdle and is not barred by the *Rooker-Feldman* Doctrine.

## II.  Immunity of Bar Counsel

Although this Court has jurisdiction over Plaintiff's remaining claim, this action may proceed no further. Plaintiff's § 1983 claim is barred by the doctrine of prosecutorial immunity.

### A. Prosecutorial Immunity[8]

Under common law doctrine, "all persons – governmental or otherwise – who [a]re integral parts of the judicial process" have "absolute immunity" from suit. *Brisco v. LaHue*, 460 U.S. 325, 335 (1983); *accord Gill v. Ripley*, 352 Md. 754, 770 (1999) ("[A]s a matter of Maryland common law . . . prosecutors enjoy absolute immunity with respect to claims arising from their role in the judicial process . . . ."). The relevant distinction is whether the prosecutor is serving in a judicial or investigational capacity at the time when the conduct occurs. *See Burns v. Reed*, 500 U.S. 478 (1991) (granting absolute immunity to prosecutor for his role in presenting evidence in a probable cause hearing but only qualified immunity for advising police officers); *see also Buckley v. Fitzsimmons*, 509 U.S. 259 (1993) (denying absolute immunity for prosecutors who, before any arrest was made, allegedly fabricated evidence during preliminary investigation and allegedly made false statements at a press conference).

Prosecutorial immunity applies even when a prosecutor fabricates evidence *so long as* the prosecutor is acting in a semi-judicial capacity. *See Carter v. Burch*, 34 F.3d 257, 262-63 (4th Cir. 1997). In *Carter*, the prosecutor failed to turn over potentially exculpatory evidence to

---

[8] For the sake of clarity, this Court has adopted the term "prosecutorial immunity" to refer to the sequence of cases discussed herein. Essentially, terms refers to the absolute immunity afforded to prosecutors when they act in judicial capacity. See *Brisco v. LaHue*, 460 U.S. 325, 335 (1983). This form of immunity is sometimes also referred to as the "quasi-judicial" immunity of prosecutors.

defense counsel even after realizing the relevance of that evidence. The United States Court of Appeals for the Fourth Circuit held that the prosecutor's actions were protected by absolute immunity when the prosecutor had discovered the evidence's relevance after the arrest but before the conviction. *Id.* In so concluding, the Fourth Circuit relied upon the reasoning in *Imbler v. Pachtman*:

> [T]he duties of the prosecutor in his role as advocate for the State involve actions preliminary to the initiation of a prosecution and actions apart from the courtroom . . . . Preparation, both for the initiation of the criminal process and for a trial, may require the obtaining, reviewing, and evaluating of evidence.

424 U.S. 409, 431 n.33 (1976). Thus, prosecutorial immunity is extensive but limited to conduct pertaining to the judicial process; meanwhile, prosecutors are *not* afforded absolute immunity when they act in an investigational capacity.

### B. Absolute Immunity of Bar Counsel

Courts that have considered the issue have extended the prosecutorial immunity to prosecutorial bar counsel as well. *See Clulow v. State of Oklahoma,* 700 F.2d 1291, 1298 (10th Cir. 1983) ("[B]ar officials charged with the duties of investigating, drawing up, and presenting cases involving attorney discipline enjoy absolute immunity from damage claims for such functions."); *Simons v. Bellinger*, 643 F.3d 774 (D.C. Cir. 1980) (granting absolute immunity to members of the Committee on Unauthorized Practice of Law, who investigate violations, determine who is prosecuted, and directs the prosecution); *see also Hirsh v. Justices of the Supreme Court of the State of California,* 67 F.3d 708, 715 (9th Cir. 1995) (granting bar counsel absolute quasi-judicial immunity for their role in attorney disciplinary system).

While the United States Court of Appeals for the Fourth Circuit has not explicitly afforded prosecutorial immunity to bar counsel, such a holding is consistent with the general jurisprudence of the Court. In *Ostrzenski v. Seigel*, 177 F.3d 245 (4th Cir. 1999), the Maryland

Board of Physician Quality Assurance had assigned a peer reviewer to investigate whether charges should be brought against the plaintiff. The Court granted the peer reviewer prosecutorial immunity notwithstanding the fact that the plaintiff had alleged violations of her Fifth and Fourteenth Amendments rights and knowing or reckless inclusion of false information in the report. *Ostrezenski*, 177 F.3d at 253. Similarly, the United States District Court for the Eastern District of Virginia extended prosecutorial immunity to an assistant bar counsel in an action to enjoin bar counsel and the Virginia State Bar from continuing to pursue disciplinary action for failure to include a disclaimer on a weblog. *Hunter v. Virginia State Bar*, No. 3:11-CV-216-JAG, 2011 WL 1770469, at *2 (E.D. Va. May 9, 2011).[9] In light of the persuasive authority in other Circuits, analogous cases in the Fourth Circuit, and the Supreme Court's jurisprudence regarding prosecutorial immunity, this Court finds that bar counsel prosecutors are afforded absolute immunity for conduct performed in a judicial capacity.

As Defendant Ridgell has absolute immunity for all conduct performed in a judicial capacity, it is clear that she has immunity for her conduct in both the evidentiary hearing in the Circuit Court for Baltimore County and in the Court of Appeals of Maryland. *See Burns*, 500 U.S. 478 (granting prosecutor immunity for conduct in probable cause hearing). In those cases, Ridgell was acting in an official capacity in a courtroom proceeding.

---

[9] In contrast, the Fourth Circuit denied absolute immunity for officials of the Patent and Trademark Office who required the plaintiff patent attorney to reveal privileged information during the initial investigation. *Goldstein v. Moatz*, 364 F.3d 205, 219 (4th Cir. 2004). The Court reasoned that the PTO officials had no power to recommend prosecution and did not serve as advocates in anyway. *Id.* at 216. Even defendant Moatz (who, as Director of the PTO's Office of Enrollment and Discipline, could call a meeting of the Committee of Discipline if he believed that a violation had occurred) was found to have acted in an investigatory capacity because there had been no finding of probable cause by the Committee at the time the conduct occurred. *Id.* Thus, the Fourth Circuit applied the traditional judicial-investigational distinction to determine whether the PTO officials were protected by absolute immunity.

Although Plaintiff did not cite *Goldstein*, that case does not require a different result. In *Goldstein*, none of the defendants participated in any sort of judicial proceeding; here, as discussed below, defendant Ridgell's conduct occurred in a judicial setting.

12

The only remaining question is whether Defendant Ridgell acted in a judicial or investigative capacity when she appeared before the Peer Review Panel. The Maryland Rules of Courts, Judges, and Attorneys clearly delineate the purpose of the Peer Review and the procedure to be followed. Specifically, Rule 16-734 states that "[u]pon *completion* of an investigation, Bar Counsel [may] . . . **(d)** file with the Commission a Statement of Charges with an election for peer review in accordance with Rule 16-741." MD R CTS J AND ATTYS Rule 16-734 (emphasis added). Furthermore, the purpose of the Peer Review Panel is to make an initial inquiry into the charges asserted against the accused attorney and to recommend whether the proceedings against that attorney should continue:

> **(a) Purpose of Peer Review Process.** The purpose of the peer review process is for the Peer Review Panel to consider the Statement of Charges and all relevant information offered by Bar Counsel and the attorney concerning it and to determine (1) whether the Statement of Charges has a substantial basis and there is reason to believe that the attorney has committed professional misconduct or is incapacitated, and, if so, (2) whether a Petition for Disciplinary or Remedial Action should be filed or some other disposition is appropriate. The peer review process is not intended to be an adversarial one and it is not the function of Peer Review Panels to hold evidentiary hearings, adjudicate facts, or write full opinions or reports.

MD R CTS J AND ATTYS Rule 16-743(a). While informal, the procedures of the panel are clearly designed to allow for both sides to present their view of the case. MD R CTS J AND ATTYS Rule 16-743(c)(1).

Accordingly, the Maryland Rules indicate that the Peer Review Panel is a proceeding that occurs *after* investigation. Moreover, despite the informal nature of the proceeding, bar counsel clearly acts as an advocate in front of the Peer Review Panel; Defendant Ridgell presented an argument that was intended to persuade the Panel to recommend further disciplinary action. *See Imbler*, 424 U.S. at 431 ("We hold . . . that in initiating a prosecution and in presenting the

State's case, the prosecutor is immune from a civil suit for damages under s 1983.") Thus, Ridgell was acting in a judicial capacity when she appeared before the Peer Review Panel.[10]

Lastly, this Court notes that affording bar counsel absolute immunity for conduct in judicial proceedings serves an important interest. In *Imbler*, the Court justified the rationale behind absolute prosecutorial immunity:

> The common law immunity of a prosecutor is based upon the same considerations that underlie the common-law immunities of judges and grant jurors acting within the scope of their duties. These include concern that harassment by unfounded litigation would cause a deflection of the prosecutor's energies from his public duties, and the possibility that he would shade his decisions instead of exercising the independence of judgment required by his public trust.

*Imbler*, 424 U.S. at 422-23 (footnote omitted). This reasoning is highly relevant to bar counsel. Indeed, the purpose of disciplinary proceedings for a lawyer's professional misconduct is "to protect the public by determining a lawyer's fitness to practice law." *Attorney Grievance Comm'n of Maryland v. Collins*, 295 Md. 532, 548 (1983) (quoting *Attorney Grievance Comm'n v. Stewart*, 285 Md. 251 (1979)). Such important public interest justifies the broad protection afforded bar counsel.

For the reasons stated above, Defendant Ridgell is protected by absolute prosecutorial immunity. Based on the immunity of bar counsel, this Court must dismiss Plaintiff's second claim.

### III. Dismissal with Prejudice

This Court dismisses Plaintiff's Amended Complaint (ECF No. 14) with prejudice. In *Forman v. Davis*, 371 U.S. 178, 182 (1962), the Supreme Court of the United States held that "repeated failure to cure deficiencies by amendments previously allowed" and "futility of

---

[10] Notably, Courts routinely have held that proceedings related to bar membership are judicial in nature. *See, e.g.*, *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 479 (1983).

amendment" are sufficient reasons for denying a request for leave to amend. *See also U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 376 (4th Cir. 2008) (holding that the court has discretion to determine if further amendment would be futile and to dismiss with prejudice); *Cozzarelli v. Inspire Pharms., Inc.*, 549 F.3d 618, 630 (4th Cir. 2008) (holding that dismissal with prejudice was warranted where "amendment would be futile in light of the [complaint's] fundamental deficiencies"); *Ganey v. PEC Solutions, Inc.*, 418 F.3d 379, 391 (4th Cir. 2005) (affirming a denial of leave to amend where any amendment would be futile).

Here, dismissal with prejudice is appropriate because, under these facts, Plaintiff is unable to allege a plausible claim relating to Defendants' conduct. Plaintiff's claim to invalidate the Court of Appeals of Maryland's decision may not be heard in this court because of the jurisdictional bar of the *Rooker-Feldman* Doctrine. Moreover, because Defendant Ridgell's alleged misconduct occurred while she was acting in a judicial capacity, Plaintiff's claims are barred by the absolute immunity of prosecutors. Therefore, further amendment is futile and Plaintiff's claims are dismissed with prejudice.

## IV. Other Motions

In addition to Defendant's Motion to Dismiss Plaintiff's First Amended Complaint, this Court has two other motions pending before it. This Court has not yet ruled on Defendant's initial Motion to Dismiss (ECF No. 4), and Plaintiff had also filed a Motion for Leave to File a Surreply (ECF No. 12) after Defendant's initial Motion to Dismiss and Reply. However, Plaintiff's initial Complaint (ECF No. 1) was superseded by Plaintiff's Amended Complaint (ECF No. 14). Moreover, Plaintiff attached her previously un-filed Surrpely to her Opposition to Defendant's Motion to Dismiss Plaintiff's First Amended Complaint. As this Court now rules

on amended versions of the pleadings, Defendant's first Motion to Dismiss (ECF No. 4) and Plaintiff's Motion for Leave to File a Surreply (ECF No. 12) must be DENIED as moot.

## CONCLUSION

For the reasons stated above, Defendant Delores Ridgell and the Attorney Grievance Commission of Maryland's Motion to Dismiss (ECF No. 15) is GRANTED and this case is dismissed with prejudice. Defendant's Motion to Dismiss (ECF No. 4) and Plaintiff's Motion for Leave to File a Surreply (ECF No. 12) are DENIED as moot.

A separate Order follows.

Dated: August 1, 2011  /s/_____
Richard D. Bennett
United States District Judge